UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MAURICIO CRUZ GAITIAN, individually
and on behalf of all others similarly situated,

                          Plaintiff,

                - against -

D'AMICO INDUSTRIES LLC, ANTONINO
D'AMICO, as an individual, and D'AMICO
CONSTRUCTION, INC.,

                        Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6466 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Mauricio Cruz Gaitian[1] ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants D'Amico Industries LLC ("Industries"), the company that employed him; Antonino D'Amico ("D'Amico"), the company's owner; and D'Amico Construction, Inc., another company owned by D'Amico (collectively, "Defendants"), for willful violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff alleges that Defendants failed to pay him overtime and proper regular wages and failed to provide him with wage statements and notices of his rate of pay. Defendants have moved for summary judgment.[2] For the reasons discussed below, the Court denies Defendants' motion in its entirety.

---

[1] The Court utilizes the spelling of Plaintiff's name contained in the amended complaint—"Mauricio Cruz Gaitian," notwithstanding the fact that Plaintiff spelled his last name at his deposition as "G-A-I-T-A-N." (*Compare* Dkt. 26 at 1, *with* Dkt. 30-5 ("Pl. Dep.") at 72:21–73:5.)

[2] Plaintiff claims that D'Amico is not a moving party. (Mem. L. Opp. Mot. Summ. J., Dkt. 33 ("Pl.'s Opp'n") at 3 n.1.) However, Defendants' notice of motion indicates that D'Amico, along with Industries and Construction, has moved for summary judgment. (Dkt. 30 at 1.)

**BACKGROUND[3]**

I.      **Relevant Facts**

Defendant D'Amico is the founder and owner of Defendant Industries, a business that

provides labor for construction services.  (Pl.'s R. 56.1 Statement, Dkt. 34 ("Pl.'s 56.1") ¶¶ 1–2,

5; Dep. Tr. of Antonino D'Amico, Dkt. 30-4 ("D'Amico Dep.") at 8:4–10.)  Industries' office,

which D'Amico visits every day, is located at 6-27 151st Street in Whitestone, New York.

(Pl.'s 56.1 ¶ 4; D'Amico Dep. 158:18–159:2.)  Industries shares its office with Defendant

Construction, another business founded and owned by D'Amico, which owns 100% of Industries.

(Pl.'s 56.1 ¶ 1; D'Amico Dep. 158:18–25; Dkt. 30-8 at ECF 76, 81.)[4]

Construction, together with Industries, enters into construction services contracts.

(D'Amico Dep. 12:2–13:7.)  Although Construction does not have employees of its own, it

provides construction equipment for Industries' employees to use on the job.  (*Id.* at 21:6–22:13,

24:22–25:10.)  Construction stores its equipment at a different site in Whitestone, known as the

"yard."  (*Id.* at 17:8–25, 19:6–12, 20:21–21:5.)

---

[3] Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement
denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to
a 56.1 statement incorporates by reference the documents cited therein; where relevant, however,
the Court may cite directly to an underlying document.  The Court construes any disputed facts in
the light most favorable to Plaintiff, as the nonmoving party, for purposes of Defendant's summary
judgment motion.  *See Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d
Cir. 2016).  However, where either party (i) admits or (ii) denies without citing to admissible
evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such
facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern
Districts of New York 56.1(c)–(d).

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing
system and not the document's internal pagination.

At times, Industries' employees would meet at the yard at the beginning of the workday. (*See id.* at 29:14–31:13.)  At other times, Industries' employees would meet directly at the job site. (*Id.*)  D'Amico would call or text the workers to let them know where to go.  (*Id.* at 29:21–23.)

Job sites were often in New York, but on at least one occasion there was a job site in New Jersey.  (*Id.* at 11:8–12.)  If the job site was in New Jersey, the equipment would be driven from New York to New Jersey.  (*Id.* at 23:14–18.)  D'Amico was on the job site daily, and directed the employees on what to do.  (*Id.* at 29:21–23, 39:19–20.)

Plaintiff began working for D'Amico and Industries in approximately 2008, performing construction work that involved blocks, cement, and bricks, and some demolition work.  (Pl.'s 56.1 ¶¶ 17, 22; Dep. Tr. of Mauricio Cruz Gaitian, Dkt. 30-5 ("Pl. Dep.") at 17:7–8.)[5]  Plaintiff stopped working for D'Amico and Industries in September 2022.  (D'Amico Dep. 96:19–22; Pl. Dep. 40:6–8; Pl. Aff., Dkt. 33-1 ¶ 2.)  During that time period, Construction's gross annual sales were never under $500,000.  (D'Amico Dep. 149:24–150:2.)

---

[5] Defendants' deposition transcript exhibits are not the final transcripts signed by the deponents.  (*See* Pl. Dep. 151; D'Amico Dep. 160.)  However, since Plaintiff does not object to their use, the Court considers them.  *See Torres v. Do It Best Corp.*, No. 07-CV-230 (CS) (LMS), 2008 WL 4974588, at *4 n.3 (S.D.N.Y. Nov. 24, 2008) ("[A]lthough the transcript of [p]laintiff's deposition is unsigned, [p]laintiff failed to object to this error with reasonable promptness, thereby waiving any objection to its use."); *Int'l Cargo & Sur. Ins. Co. v. M/V "Hreljin,"* No. 88-CV-3807 (BN), 1993 WL 426651, at *4 n.4 (S.D.N.Y. Oct. 19, 1993) (finding "that counsel for plaintiff was present at the deposition and was aware of the missing signature no later than . . . some two and a half months prior to trial, but did not object to its admission until trial.  Plaintiff did not make a motion to suppress within a reasonable time under Rule 32(d)(4).  Thus, even if the deposition were excludable at trial for lack of a signature, the objection was waived by operation of law"); *see also* Fed. R. Civ. P. 32(d)(4) ("An objection to how the officer . . . prepared, signed, certified, sealed, endorsed, sent, or otherwise dealt with the deposition . . . is waived unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known.").

## II.    Procedural History

On October 25, 2022, Plaintiff filed his original complaint in this matter, asserting willful violations of the FLSA and NYLL by D'Amico and Industries.  (Dkt. 1 at ECF 6–9.)  Defendants answered the complaint, (Dkt. 14), and after the parties engaged in discovery for several months, Defendants filed a request for a pre-motion conference in anticipation of moving for summary judgment, (Dkt. 18).  After the Court denied Defendants' request as premature, (6/25/2023 Docket Order), and further discovery took place, Defendants again requested a pre-motion conference, (Dkt. 22).  At the pre-motion conference, held on November 7, 2023, the Court permitted Plaintiff to amend his complaint.  (11/7/2023 Minute Entry.)  Plaintiff filed his amended complaint on November 27, 2023, (Dkt. 26), and on December 5, 2023, Defendants moved for summary judgment, (Dkt. 30).  On January 4, 2024, Plaintiff filed his opposition,[6] and the motion was fully briefed.[7]  (Dkt. 33.)

## LEGAL STANDARDS

Summary judgment is proper only where "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute between the parties will not defeat a motion for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Rather, a genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the nonmovant's favor."  *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting

---

[6] In Plaintiff's opposition brief, Plaintiff requested sanctions in the form of attorneys' fees, asserting that Defendants filed a frivolous motion.  (*See* Pl.'s Opp'n at 14–20.)  However, such a request needs to be filed as a separate motion.  Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion[.]").  The Court therefore denies Plaintiff's request as procedurally improper.

[7] Defendants did not file a reply brief in support of their motion for summary judgment.

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014)).  The Court resolves all factual ambiguities and draws all permissible inferences in favor of the nonmoving party.  *See Est. of Gustafson*, 819 F.3d at 675.

Initially, the movant must demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "[I]n determining whether the moving party has met this burden," a court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.* (citing *Giannullo v. City of New York,* 322 F.3d 139, 143 n.5 (2d Cir. 2003)).  Thus, "[i]n reviewing a motion for summary judgment, the court may scrutinize uncited portions of the record, and grant or deny summary judgment as the record warrants." *Farricker v. Penson Dev., Inc.*, No. 07-CV-11191 (PKC), 2011 WL 6412512, at *3 (S.D.N.Y. Dec. 9, 2011) (citing Fed. R. Civ. P. 56(c)(3)), *aff'd*, 513 F. App'x 46 (2d Cir. 2013).  "'If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production,' summary judgment must be denied 'even if no opposing evidentiary material is presented.'"  *Soley v. County of Nassau*, No. 18-CV-377 (ARR) (SB), 2024 WL 1494383, at *13–14 (E.D.N.Y. Mar. 4, 2024) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).

## DISCUSSION

### I.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment on two grounds: (1) Defendant Construction did not employ Plaintiff; and (2) the FLSA is inapplicable because Defendants Industries and D'Amico do not qualify for the statute's enterprise coverage and Plaintiff does not qualify for the statute's

individual coverage.  (Dkt. 30-3 ("Defs.' Mem.") at 3–8.)  The Court addresses each argument in turn.

### A.      Plaintiff's Employer(s)

Defendants argue that Plaintiff was employed by D'Amico and Industries, but not by Construction, so summary judgment is appropriate as to Construction.  (Defs.' Mem. 3–5.)  In response, Plaintiff asserts that Construction and Industries are a joint enterprise that collectively employed Plaintiff, and that both entities, along with D'Amico, are liable for Plaintiff's claims.  (Pl.'s Opp'n 8–11.)  The Court finds that there is a genuine dispute of material fact as to whether Construction and Industries were a joint enterprise that, along with D'Amico, employed Plaintiff.  *See Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 186 (2d Cir. 2010) (holding that joint employment is a mixed question of law and fact properly for consideration by the jury).

An entity for whom an employee did not work directly can nonetheless be liable under FLSA under the joint employer doctrine.  *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008).  "The joint employer doctrine, . . . [has] been developed to allow a plaintiff to assert employer liability in the employment . . . context against entities that are not her formal, direct employer."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016).  "[A] 'joint employer' relationship involves separate legal entities that 'handle certain aspects of their employer-employee relationship jointly.'"  *Id.* (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)).  To evaluate whether entities are a "joint employer," courts consider the non-exclusive and overlapping factors first set forth in *Zheng v. Liberty Apparel Co.*, which evaluated whether a manufacturer exercised "functional control" over subcontracted workers:

> (1) whether [the manufacturer's] premises and equipment were used for the [putative employees'] work; (2) whether the Contractor[s] . . . had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the putative employees] performed a discrete line-job that was integral to [the manufacturer's] process of production; (4) whether responsibility

6

under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [manufacturer] or [its] agents supervised [the putative employees'] work; and (6) whether [the putative employees] worked exclusively or predominantly for the [manufacturer].

*Grenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 38 (2d Cir. 2016) (summary order) (alteration in original) (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)). "Whether two corporations are a single employer or alter egos for purposes of labor law presents a question of fact." *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 164 (2d Cir. 2021).

Based on the relevant factors, there is a genuine dispute of material fact as to whether Industries and Construction operated as a joint enterprise that, together with D'Amico, employed Plaintiff. First, the evidence adduced by the parties shows that Industries used Construction's yard to marshal its employees (like Plaintiff), and those employees also used Construction's equipment. (D'Amico Dep. 17:8–25, 20:21–21:5; 24:22–25:2; 29:14–31:13.) Second, while Industries' workers did not formally "shift" their employment to Construction, Industries' employees depended on Construction in that they were ultimately directed by D'Amico, Construction's and Industries' owner, on a daily basis regarding their assignments and tasks. (*Id.* at 29:21–30:12, 40:19–23, 60:1–23; Dkt. 30-8 at ECF 81 (indicating that D'Amico is the 100% owner of Construction).) Third, Industries' workers were essential to Construction's ability to perform its contracts, as Construction did not have employees of its own. (D'Amico Dep. 25:8-10.) Fourth, responsibility arguably could pass from one entity to the other without material changes given that D'Amico owned and ran both companies, including out of an office jointly shared by Construction and Industries, and all the same employees worked on the contracts entered into by both companies. (Pl.'s 56.1 ¶ 1; D'Amico Dep. 158:18–25 (indicating that Construction and Industries share an office); Dkt. 30-8 at ECF 76 (indicating that Construction is the 100% owner of Industries); *id.* at ECF 81.) Fifth, D'Amico was on site every day directing and supervising the

employees' work for both companies.  (D'Amico Dep. 29:21–23, 59:22–61:8 (indicating that D'Amico was "at the job site every day" and "direct[ed] them what to do").)  And sixth, while the workers were nominally employed exclusively by Industries, they worked on all of the contracts also entered into by Construction, as noted above.  (*Id.* at 12:2–13:7.)

It is clear that based on this evidence, a jury reasonably could conclude that Industries and Construction qualified as a joint employer under both the FLSA and NYLL.  *See, e.g.*, *Flannigan v. Vulcan Power Grp., LLC*, 642 F. App'x 46, 52 (2d Cir. 2016) (summary order) (affirming jury's finding of joint employer under NYLL, which "embodies the same standards for joint employment as the FLSA," where companies operated out of the same office, shared at least one administrative employee, and were both controlled by the same individual, among other facts); *Zheng*, 355 F.3d at 75 (noting that a joint employer may become *de facto* responsible for employees hired by a contractor, where employees perform work solely on joint employer's job site).

Accordingly, the Court rejects Defendants' argument that no jury could find that Construction employed Plaintiff and denies summary judgment on that ground.

## B.   FLSA Coverage

The FLSA's minimum wage and overtime protections apply in two situations, known as "individual" and "enterprise" coverage.  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 366–67 (E.D.N.Y. 2022).  Only one form of coverage is necessary for a Plaintiff to proceed under the FLSA.  *Cao v. Wedding in Paris LLC*, No. 20-CV-2336 (RPK) (JAM), --- F. Supp. 3d ----, 2024 WL 1518847, at *15 (E.D.N.Y. Mar. 29, 2024).

Defendants argue that Plaintiff cannot avail himself of the FLSA's protections because Plaintiff does not qualify for the statute's individual coverage and Industries and D'Amico do not qualify for the statute's enterprise coverage.  (Defs.' Mem. 5–8.)  In response, Plaintiff asserts that "[he] qualifies for enterprise coverage" because Defendants engaged in interstate commerce and

8

because Industries meets FLSA's $500,000 threshold requirement.  (Pl.'s Opp'n 12–13 (cleaned up).)  The Court finds as a matter of law that Plaintiff is not entitled to individual coverage, but finds that there remain genuine disputes of material fact as to whether Defendants meet the $500,000 threshold for enterprise coverage.  Further, as a matter of law, Defendants engaged in interstate commerce for purposes of enterprise coverage.  Accordingly, the Court denies Defendants' summary judgment motion on this basis.

> 1.      Individual Coverage

Individual coverage under the FLSA applies only to an employee who "personally 'engaged in commerce or in the production of goods for commerce[.]'"  *See Najera v. Kurtishi*, No. 21-CV-1309 (ER), 2023 WL 4529866, at *8 (S.D.N.Y. July 13, 2023) (quoting 29 U.S.C. §§ 206(a), 207(a)(1)); *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 329 (E.D.N.Y. 2015).  "To be 'engaged in commerce,' the employee must perform work 'involving or related to the movement of persons or things . . . among the several States or between any State and any place outside thereof.'"  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (emphasis omitted) (quoting 29 C.F.R. § 779.103).  However, "[s]uch activities must be a 'substantial part of the employee's work.'"  *Ying Shun Zhao v. Sunny 39 Hotel Corp.*, No. 14-CV-1847 (JG) (MDG), 2015 WL 5307716, at *5 (E.D.N.Y. Sept. 10, 2015) (quoting *Boekemeier v. Fourth Universalist Soc'y City of N.Y.*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)).

Here, it is undisputed that, in connection with one job, Construction's equipment, purchased by D'Amico and utilized by workers from Industries, was transported from New York to New Jersey.  (D'Amico Dep. 23:14–18.)  Further, the parties agree that Plaintiff personally performed work at that New Jersey job site and that he traveled from New York to New Jersey to perform that work.  (*See id.* at 11:8–12; Pl. Dep. 23:7–15.)  While such activity could, under certain circumstances, be enough to establish individual coverage as to Plaintiff, the evidence before the

Court reflects that Plaintiff worked at the job site in New Jersey for only one week. (Pl. Dep. 24:9–12.) No reasonable juror could conclude that Plaintiff's work in New Jersey for one week constituted a "substantial part" of his employment by Defendants over a period of years. *See Zhao*, 2015 WL 5307716, at *5 (finding individual coverage where "a reasonable juror could conclude that a substantial part of [plaintiff's] duties"—there, answering phones, collecting payments from guests, and placing supply orders at a hotel—"involved his being 'engaged in commerce'"). The Court therefore concludes, as a matter of law, that Plaintiff is not entitled to individual coverage. *See Ethelberth*, 91 F. Supp. 3d at 354 (noting that individual coverage might apply to an employee who engages in "*regular*[] travel across State lines while working," but finding that plaintiff-employee could not establish individual coverage based "solely on his own general statements that he guarded over items that were made outside of New York" (emphasis added and omitted)); *Bowrin v. Cath. Guardian Soc.*, 417 F. Supp. 2d 449, 466–71 (S.D.N.Y. 2006) (holding that individual coverage applied to employees who traveled across state lines for work two to four times per month, but did not apply as to other employees who traveled across state lines only a few times a year).

### 2.      Enterprise Coverage

Whereas individual coverage focuses on an employee's activities, enterprise coverage may apply if a business has annual gross sales, during the applicable FLSA coverage period, of $500,000 or more. *See Tillman*, 137 F. Supp. 3d at 329; 29 U.S.C. § 203(s)(1)(A)(ii) (stating requirement of "an enterprise whose annual gross volume of sales made or business done is not less than $500,000"). If the threshold dollar amount is met, "all of the employer's employees are covered under [FLSA] as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved in or produced for [interstate] commerce." *Ethelberth*, 91 F. Supp. 3d at 355 (quoting *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021, 2012 WL 3235784,

10

at *4 (E.D.N.Y. Aug. 7, 2012)).  "[I]n order to survive summary judgment" in this context, "the

plaintiff need not prove that enterprise coverage exists but rather that a material dispute of fact

regarding the issue is present."  *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830,

837 (S.D.N.Y. 2020).

Plaintiff filed this case, alleging willful violations of FLSA, on October 25, 2022.  (*See*

Dkt. 1 at 9.)  Therefore, the Court evaluates enterprise coverage from October 25, 2019, to October

25, 2022.[8]  (*See, e.g.*, Am. Compl., Dkt. 26 ¶¶ 76–77, 84–85 (alleging willful violations of FLSA));

*Nakahata*, 723 F.3d at 199 n.4; *Cabrera*, 412 F. Supp. 3d at 177; *see also Davella v. Ellis Hosp.,*

*Inc.*, No. 20-CV-726 (MAD) (ATB), 2023 WL 5367791, at *10 (N.D.N.Y. Aug. 21, 2023)

(holding that "keying the [FLSA] look-back period to the initial complaint and not the amended

complaint is appropriate").  Here, D'Amico testified in his deposition on September 13, 2023, that

Construction's gross annual sales were never "under [$]500,000 at any point over the past six

years," which raises a genuine question of material fact as to whether Construction's annual gross

sales alone—without even factoring in Industries' sales, *see supra* Discussion Section I.A (finding

genuine question of material fact as to whether Construction and Industries are a joint employer)—

satisfy the requirements for enterprise coverage, (D'Amico Dep. 149:24–150:2).

Even as to Industries itself, a material question of fact remains whether its annual gross

sales meet the enterprise coverage threshold, because Defendants have failed to submit a complete

set of tax returns—which they rely on in support of their argument—for the relevant time period.

---

[8] The applicable statute of limitations for FLSA claims depends on whether the alleged misconduct was "willful" or not.  "For [a] plaintiff's claims to be timely under the FLSA, they must have arisen within the two years prior to the filing of the complaint, or—for willful violations—within the three years prior."  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 177 (E.D.N.Y. 2019) (citing 29 U.S.C. § 255(a)); *see Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199 n.4 (2d Cir. 2013).

(*See* Defs.' Mem. 6; Dkt. 30-8.)  "Courts in this circuit have found that where a defendant fails to provide a complete financial record, a genuine issue of material fact exists."  *Sanchez v. Pizza Reale Ltd.*, No. 18-CV-469 (ENV) (RER), 2020 WL 5704764, at *4 (E.D.N.Y. Aug. 10, 2020) (citing *Hanming Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 U.S. Dist. LEXIS 179427, at *17–18 (E.D.N.Y. Dec. 27, 2016), *R. & R. adopted in relevant part*, 2017 U.S. Dist. LEXIS 9958, at *9 (E.D.N.Y. Jan. 23, 2017)), *R. & R. adopted*, (E.D.N.Y. Dec. 4, 2020).  Instead, Defendants submit tax returns as to Industries for 2017 and 2018, and for 2020 through 2022—but not 2019—and as to Construction, for 2019 only.[9]   While those tax returns show that Industries' annual gross revenue in 2020 was $159,612, annual gross revenue in 2021 was $230,415, and annual gross revenue in 2022 was $313,262, (Dkt. 30-8 at ECF 152, 190, 228), the lone 2019 tax return available—for Construction—shows that Construction had a gross annual revenue of $1,004,022 in that year, (*id.* at ECF 75).  This conflicting and incomplete evidence creates a genuine dispute of material fact sufficient to deny summary judgment.  *See Loo v. I.M.E. Rest., Inc.*, No. 17-CV-02558 (ARR) (RER), 2018 WL 6814368, at *5 (E.D.N.Y. Dec. 27, 2018) ("Though a [business's] tax returns do not provide *conclusive* evidence of the entity's gross sales or receipts, a court may rely upon tax returns in determining whether there is a genuine dispute of material fact regarding enterprise coverage.") (citing *Yupa v. Country Stone & Fence Corp.*,

---

[9] Defendants also have not submitted signed tax returns in support of their motion, nor are their tax returns accompanied by a sworn affidavit by their preparer attesting to their veracity.  (*See generally* Dkt. 30-8.)  However, the Court may consider unsigned, unsworn tax returns.  *See Han v. Shang Noodle House, Inc.*, No. 20-CV-2266 (PKC) (VMS), 2023 WL 5755213, at *5 (E.D.N.Y. Sept. 5, 2023) ("Although tax returns supported by supplemental evidence are generally considered more credible, even unsigned, unsworn tax returns lacking additional corroborating evidence can be dispositive in the absence of countervailing evidence."); *see also Monterossa v. Martinez Rest. Corp.*, No. 11-CV-3689 (JMF), 2012 WL 3890212, at *3–4 (S.D.N.Y. Sept. 7, 2012) (denying summary judgment where defendants' own gross sales evidence was contradicted by other evidence in the record).

No. 14-CV-7384 (DRH) (AKT), 2017 WL 27957, at *4 (E.D.N.Y. Jan. 3, 2017)); *Jia Hu Qian v. Siew Foong Hui*, No. 11-CV-5584 (CM), 2013 WL 3009389, at *4 (S.D.N.Y. June 14, 2013) ("The failure of Defendants to submit a complete record, despite their representation otherwise, suggests to this Court that there are disputed issues concerning the completeness, and quite possibl[y] the veracity, of Defendants' financial data.").

As for the interstate commerce nexus required for enterprise coverage, "[t]he handling of items that have 'undoubtedly moved in interstate commerce' is sufficient to allege enterprise coverage." *Sanchez Flores v. El Bukanitas Inc.*, No. 22-CV-6751 (DG) (SJB), 2024 WL 1051161, at *5 (E.D.N.Y. Feb. 14, 2024) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). Thus, "[t]he clear language of [FLSA] indicates that even a business engaged in purely intrastate activities [cannot] claim an exception from FLSA [enterprise] coverage if the goods its employees handle have moved in interstate commerce." *Kim v. WJ Grp. Inc.*, No. 18-CV-3833 (ILG) (RML), 2019 WL 1433080, at *2 (E.D.N.Y. Mar. 29, 2019) (quoting *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981)); *see Ethelberth*, 91 F. Supp. 3d at 355 (citing *Jones*, 2012 WL 3235784, at *4). "[I]t is 'rarely difficult to establish' that an enterprise's employees have handled or worked on goods that have previously moved in interstate commerce. As the Supreme Court has said: '[I]f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.'" *Kim*, 2019 WL 1433080, at *2 (citations omitted) (first quoting *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009), then quoting *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964)). Indeed, courts have inferred from the nature of certain businesses that those businesses operated in interstate commerce. *See, e.g.*, *Feng v. Kelai Corp.*, No. 18-CV-12329 (RWL), 2024 WL 1348654, at *10 (S.D.N.Y. Mar. 29, 2024) (finding enterprise coverage where "the [c]ourt reasonably infer[red] from the nature of

[defendant's] business as a restaurant located in New York City that [defendant] handled goods, such as food and other supplies, that originated outside of New York and regularly traveled through interstate commerce"); *Cabrera*, 412 F. Supp. 3d at 174 ("To decline to make reasonable inferences of interstate commerce in cases like this would frustrate the FLSA's remedial purpose and would give employers perverse incentives to default in FLSA actions, where plaintiff workers may lack specific information about their employers' distribution networks.  The Court refuses to handicap working men and women in such a manner.").

Here, as noted *supra*, both Plaintiff and D'Amico testified that Defendants took on a job at a site in New Jersey, resulting in the movement of both Defendants' employees and equipment across state lines from New York.  (Pl. Dep. 23:7–20; D'Amico Dep. 11:8–12, 23:14–18.)  These facts suffice for the Court to find, as a matter of law, that Defendants operated in interstate commerce for purposes of FLSA's enterprise coverage.  *See, e.g.*, *Li v. SMJ Constr. Inc.*, No. 19-CV-5309 (PGG) (JW), 2022 WL 4463225, at *4 (S.D.N.Y. Sept. 26, 2022) (holding that transport across state lines of "supplies and equipment" for construction sites satisfied the threshold for enterprise liability under FLSA); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *3 (E.D.N.Y. Mar. 31, 2015) ("Also, since plaintiffs performed construction work in New York and New Jersey, they were likely to have handled tools and construction materials that traveled in interstate commerce.").  In addition, there can be little doubt that the equipment and goods, which included blocks, cement, bricks, and other materials, that Defendants' employees used in their construction jobs originated outside of New York.  *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120 (JG), 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) ("[I]t is inconceivable that none of the trucks or other materials used by Plaintiffs in their line of work originated outside of New York."); *Cardoza v. Mango King Farmers Mkt.*

14

*Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at \*4 (E.D.N.Y. Sept. 1, 2015) (holding that defendants in food supply industry engaged in interstate commerce because it could reasonably be inferred that products originated or were sold outside of New York), *R. & R. adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015); *Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-4761 (ARR) (ST), 2019 WL 4889591, at \*5 (E.D.N.Y. Sept. 10, 2019) ("[I]t is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales 'requires a wide variety of materials . . . .' and it is 'reasonable to infer that some of these materials moved or were produced in interstate commerce.'") (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015)), *R. & R. adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019).  This inference, however, is sufficient, but not necessary, for the Court to find as a matter of law that Defendants operated in interstate commerce for purposes of enterprise coverage.

In sum, the Court finds that there remains a genuine factual dispute about whether Defendants' annual gross sales met the $500,000 threshold during the applicable FLSA coverage period, but also finds that the undisputed evidence establishes that Defendants operated in interstate commerce for purposes of enterprise coverage—which means that if this case proceeds to trial, Defendants will be precluded from arguing or presenting evidence solely for the purpose of showing that the interstate-commerce-nexus element of enterprise coverage under the FLSA is not met.  Accordingly, the Court denies Defendants' motion for summary judgment on this basis.

## II.     Supplemental Jurisdiction

Lastly, Defendants make a passing suggestion that the Court should decline to maintain supplemental jurisdiction over Plaintiff's NYLL claims.  (Defs.' Mem. 2.)  Given that the Court denies Defendants' motion for summary judgment as to Plaintiff's FLSA claims, this issue—absent further argument—is irrelevant.  *See, e.g.*, 28 U.S.C. § 1367(c) (noting that a district court may decline to exercise supplemental jurisdiction if, among other circumstances, "the district court

has dismissed all claims over which it has original jurisdiction").  In any event, the parties have

failed to adequately brief this point.  *Cf. Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 84

(2d Cir. 2018) ("[I]nsofar as a district court undertakes, *sua sponte*, [an] inquiry into whether to

maintain supplemental jurisdiction . . . , it must give the parties notice and an opportunity to be

heard prior.").  The Court finds that this argument is not properly before the Court, and therefore

does not consider it.

**CONCLUSION**

For all the foregoing reasons, the Court denies Defendants' motion for summary judgment.

Furthermore, the Court finds, as a matter of law, that individual coverage does not apply to

Plaintiff's FLSA claims.  That finding therefore may not be contested at trial.  Similarly, because

the Court has found as a matter of law that the interstate-commerce-nexus element of enterprise

coverage under the FLSA has been satisfied, that finding may not be contested at trial.  The parties

shall submit a Joint Pretrial Order that complies with the Court's Individual Practices and Rules

by November 22, 2024.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 23, 2024
        Brooklyn, New York